# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff**, v. CHRISTIAN PÉREZ-FÉLEX, **Defendant.** | **Criminal No.** 18-178 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Defendant Cristian Pérez-Félix ("Pérez") moves to dismiss the indictment pursuant to 8 U.S.C. section 1326(d) ("section 1326(d)"). (Docket Nos. 20 & 28.) For the reasons set forth below, the Court **DENIES** Pérez's motion to dismiss.

**I. Background**

This criminal action stems from Pérez's repeated attempts to enter and remain in the United States without authorization from the Department of Homeland Security ("DHS").[1] Pérez is a citizen of the Dominican Republic. (Docket No. 28 at p. 1.) In 2006, law enforcement officers apprehended Pérez after he entered the United States illegally. (Docket No. 35 at p. 2.) An immigration judge

---
[1] In 2003, the DHS replaced and assumed the responsibilities of the Immigration and Naturalization Service ("INS"). 6 U.S.C. §§ 251 & 291.

granted Pérez's request to voluntarily depart the United States pursuant to 8 U.S.C. section 1229c(b).  Id.[2]

Pérez again entered the United States illegally in 2010. (Docket No. 20 at p. 2.)  Puerto Rico law enforcement officers arrested Pérez for purported violations of the Domestic Violence Act, P.R. Laws Ann. tit 8, sections 601-604, for possession of a firearm, for possession and use of an edged weapon, and for aggravated damages.  (Docket No. 35 at p. 2.)  The Commonwealth of Puerto Rico Superior Court ultimately dismissed the criminal complaint.  Id.  Immigration Customs Enforcement ("ICE") officers, then, placed Pérez in federal custody.  Id.

Pérez received a Notice to Appear on June 25, 2018.  (Docket No. 22, Ex. 1 at pp. 1-2.)    The Notice to Appear alleged that Pérez was removable pursuant to 8 U.S.C. section 1182(a)(6)(A)(i), and ordered him to appear before an immigration judge on a date and time "to be set."  Id.[3]  On July 12, 2010, Pérez's attorney filed a motion requesting bail and assuming legal representation. (Docket No. 25, Ex. 1.)  The motion referred to a hearing on the

---

[2] The "Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense if, at the conclusion of a [removal] proceeding . . . the immigration judge enters an order granting voluntary departure in lieu of removal."  8 U.S.C. § 1229c(b).

[3] In the absence of certain enumerated exceptions, "[a]n alien in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."  8 U.S.C. § 1182(a)(6)(A)(i).

following day at 1:00 PM.  Id.  The removal proceeding occurred on July 13, 2010.  (Docket No. 22, Ex. 4.)  Pérez attended the hearing with the assistance of counsel.  Id.  His attorney and the immigration judge addressed the basis of removal:

> Judge: Counsel, I understand that the respondent at this point in time has no relief from removal?
>
> Counsel: Yes, Your Honor.
>
> Judge: He was previously granted a voluntary departure by an Immigration Judge?  I understand he was deported and returned illegally.
>
> Counsel: That's correct your Honor . . . we believe it was in the year 2008.

(Docket No. 35 at p. 8.)  The immigration judge issued a removal order.  Id.  Pérez waived his right to an appeal.  Id.  Law enforcement officers removed him from the United States on July 22, 2010.  (Docket No. 35 at p. 3.)

Eight years later, a grand jury charged Pérez with conspiracy to possess with intent to distribute cocaine, attempting to possess with intent to distribute heroin, and attempting to possess with intent to distribute cocaine all in violation of 21 U.S.C. sections 846 and 841(b)(1)(A).  See United States v. Maleno-Pérez, No. 18-125 (JAG).[4]  Subsequently, a grand jury returned a one-count

---

[4] Pérez is also known as Christian Alberto Maleno-Pérez.

indictment charging Pérez with illegal reentry in violation of 8 U.S.C. section 1326(a) ("section 1326"). (Docket No. 1.)

Pérez moves to dismiss the illegal reentry count, setting forth two arguments in support of dismissal. (Docket Nos. 20 & 28.) First, Pérez contends that the recent United States Supreme Court decision in Pereira v. Sessions, 138 S. Ct. 2105 (2018), invalidates the 2010 removal order. (Docket No. 20 at pp. 3—7.) Second, Pérez argues that the immigration judge neglected her "obligation to inform [Pérez] of apparent relief from deportation." (Docket No. 28 at p. 3.) Both arguments are unavailing.

**II. Discussion**

An indictment is sufficient "if it contains the elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and enables him to enter a plea without fear of double jeopardy." United States v. Ford, 839 F.3d 94, 104 (1st Cir. 2016) (internal quotation marks and citation omitted). To secure a conviction pursuant to section 1326, the United States must prove that Pérez "(1) is an alien, (2) was previously deported, and (3) thereafter entered, or attempted to enter, the United States without permission." United States v. Palacios, 492 F.3d 39, 42 (1st Cir. 2007) (citation omitted). A defendant charged with illegal reentry, however, may wage a

collateral attack by challenging the predicate deportation underlying the section 1326 allegation. Id.; see United States v. Mendoza-López, 481 U.S. 828, 839 (1987) (holding that "review [must] be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense"). To prevail on a collateral attack, Pérez must demonstrate that:

> (1)  [he] exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2)  the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and
>
> (3)  the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). "These elements are in the conjunctive; therefore, a defendant must satisfy all of them to successfully attack his removal order." United States v. Luna, 436 F.3d 312, 317 (1st Cir. 2006).

### A. Jurisdiction

Pérez attempts to circumvent the analysis set forth in section 1326. According to Perez, "the immigration judge lacked jurisdiction over [him] because the notice to appear was deficient." (Docket No. 20 at p. 4.) The Court disagrees.

The Immigration and Naturalization Act authorizes immigration judges to "conduct proceedings for deciding the inadmissibility or

deportability of an alien." 8 U.S.C. § 1229a(a)(1). The INA, however, is silent as to the procedure in which jurisdiction vests in an immigration court. Congress empowered the Attorney General to "establish such regulations" as he or she "determines to be necessary for carrying out" the INA. 8 U.S.C. § 1103(g)(2). These regulations provide that "jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). Charging documents "include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." 8 C.F.R. § 1003.13; see Ka Cheung v. Holder, 678 F.3d 66, 67 n.1 (1st Cir. 2012) ("A Notice to Appear is a document that charges an alien with being removable under the INA. The Notice is served on the alien and then filed in immigration court, commencing removal proceedings").

Pursuant to 8 C.F.R. section 1003.15, the Notice to Appear must set forth specific information, such as "the charges against the alien and the statutory provision alleged to have been violated." 8 C.F.R. § 1005.15(b) & (c). The Notice to Appear should also include "the time, place and date of the initial removal hearing, where practicable." 8 C.F.R. § 1003.18. If the date and time are omitted in the Notice to Appear, the "Immigration Court shall be responsible for scheduling the initial removal

hearing and providing notice to the government and the alien of the time, place, and date of hearing." Id.; see Guamanrriga v. Holder, 670 F.3d 404, 410 (2nd Cir. 2012) (noting that "circumstances often arise that make it impracticable for the DHS to provide an alien with the precise date and time of his initial removal hearing at the moment it serves the initial Notice to Appear, and in these instances, the DHS may indicate in the [Notice to Appear] that it will give the alien subsequent notice . . . once it files the NTA with the appropriate immigration court'") (internal quotation marks and citation omitted).

**1. The 2010 Removal Order**

The notice received by Pérez lacked the date and time of the removal hearing, stating that he must appear "on a date to be set, at a time to be set." (Docket No. 22, Ex. 1.)[5] Despite the omission of this information, jurisdiction nevertheless vested in

---

[5] The record is devoid of any subsequent Notice to Appear. The United States, however, infers that Pérez received a subsequent notice. (Docket No. 25 at p. 3.) Pérez's attorney referred to the July 13, 2018 hearing in his motion for bail. (Docket No. 25, Ex. 1.) Logic dictates that Pérez received a subsequent notice, without which his attorney would not have referred to the upcoming removal hearing in the motion requesting bail. Accordingly, the Court is satisfied that Pérez received a subsequent notice setting forth the date and time of his removal hearing.

the immigration court. See 8 C.F.R. § 1003.14(a).[6]  Indeed, the Notice to Appear need not contain the date and time of the removal hearing to trigger the immigration court's jurisdiction. See Herrera-Orozco v. Holder, 603 F. App'x 471, 472 (5th Cir. 2015) (affirming immigration judge's holding that "the process by which an alien who has received an NTA is subsequently notified of the date and time of his hearing by a hearing notice is a valid practice that does not negate an Immigration Court's jurisdiction"); Beltrán-Rodríguez v. Holder, 530 F. App'x 464, 465 (6th Cir. 2013) ("The BIA also properly determined that the alleged deficiencies in the notices to appear did not deprive the [immigration judge] of jurisdiction because the petitioners were subsequently notified in writing of the time and date of the hearing."); Dababneh v. Gonzales, 471 F.3d 806, 808 (7th Cir. 2006) (rejecting defendant's argument "that the [immigration judge] did not have jurisdiction to initiate his removal proceedings because DHS did not specify the date and time of his initial hearing in the NTA"); Haider v. Gonzales, 438 F.3d 902, 908 (8th Cir. 2006) (holding that a Notice

---

[6] The Notice to Appear provided Pérez with ample information regarding the removal hearing. (Docket No. 22, Ex. 1.)  Pérez received notice that: (1) DHS initiated proceedings against him, (2) the factual basis for the removal proceedings, (3) the applicable statute, (4) the location of the immigration court, (5) that the a date and time of the hearing would be set, (6) that legal representation was available at no cost to Pérez, (7) that Pérez would have the opportunity to present evidence at the removal proceeding, (8) that he had a "right to appeal an adverse decision by the immigration judge," and (9) that "a removal order may be made by the immigration judge in [his] absence." Id.

to Appear without the date and time "was sufficient to initiate removal proceedings against [the defendant] and thereby vest the Immigration Court with jurisdiction"); Popa v. Holder, 571 F.3d 890, 896 (9th Cir. 2009) ("[W]e hold that a Notice to Appear that fails to include the date and time of an alien's deportation hearing, but that states that a date and time will be set later, is not defective so long as a notice of the hearing is in fact later sent to the alien."). Consequently, Pérez's argument regarding the immigration court's purported lack of jurisdiction is unpersuasive.

### 2. Pereira v. Sessions is Not Dispositive

Pérez invokes Pereira for the proposition that a deficient Notice to Appear negates the immigration court's jurisdiction. Docket No. 20 at p. 3 (citing Pereira, 138 S. Ct. 2105 (2018)). Pereira concerned a form of discretionary relief from removal known as the "stop-time rule." 138 S. Ct. at 2109. Pursuant to the Illegal Immigration and Immigrant Responsibility Act of 1996 ("IIRIRA"), cancellation of removal is available to nonpermanent resident aliens present in the United States "for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b)(1). A Notice to Appear "caps an aliens' cumulative period of residence." Afful v. Ashcroft, 380 F.3d 1, 6 (1st Cir. 2004) (citing 8 U.S.C. §

1229b(d)(1)).  Pursuant to section 1229(a), the Notice to Appear must specify the "time and place at which the proceedings will be held."  Compare 8 U.S.C. § 1229(a)(1)(G) with 8 C.F.R. § 1003.18 ("[The] service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable.").

Pérez's reliance on Pereira is misplaced.  The Supreme Court granted certiorari to determine whether "a 'notice to appear' that does not specify the 'time and place at which the proceedings will be held' as required by § 1229(a)(1)(G), triggers the stop-time rule."  Pereira, 138 S. Ct. at 2112.  The answer is no.  Id.  In Pereira, the Supreme Court held that the "statuary text alone [was] enough to resolve [the] case," reasoning that "[f]or § 1229(b)(1) to have any meaning, the 'notice to appear must specify the time and place that the noncitizen, and his counsel, must appear at the removal hearing."  Id. at 2113.

Pérez adopts an unduly broad interpretation of Pereira, asserting that the "immigration judge lacked jurisdiction over [him] because the notice to appear was deficient."  (Docket No. 20 at p. 4.)  The gravamen of Pérez's argument is that the Notice to Appear he received failed to confer jurisdiction on the immigration court.  Pereira is inapposite.  The sole issue before the Pereira court concerned the adequacy of a Notice to Appear in the context

of the stop-time rule.  138 S. Ct. 138.  Indeed, the Supreme Court tethered the Notice to Appear and stop-time rule together throughout its decision, emphasizing its "narrow" ruling.  138 S. Ct. at 2105.  Pereira and section 1229(a) make no mention of jurisdiction.  Id.; 8 U.S.C. § 1229(a).  Conversely, the regulations promulgated by the Attorney General bear directly on this matter: "Jurisdiction vests . . . when a charging document is filed with the Immigration Court."  8 C.F.R. § 1003.14.  A Notice to Appear informing the defendant that the date and time of the removal hearing will "be set" qualifies as a charging document, conferring jurisdiction on the immigration court.  See 8 C.F.R. § 1003.15.

The factual circumstances in Pereira are distinguishable.  While Pereira failed to appear before the immigration judge, Pérez attended his removal hearing with the assistance of counsel.  138 S. Ct. at 2112; Docket No. 35 at p. 8.  Pereira never received the subsequent Notice to Appear with the time and date of his removal hearing.  138 S. Ct. at 2111.  The subsequent notice that Pérez received set forth the time and date of the removal hearing.  Accordingly, the "due process concerns advanced by the Supreme Court in Pereira do not apply when the government cures a defective NTA and the alien appeared at his removal hearing."  United States

v. Mendoza-Sánchez, No. 17-189, 2018 U.S. Dist. LEXIS *7 (D.N.H. Nov. 5, 2018).

This court has not determined whether Pereira extends beyond the scope of the stop-time rule. Another court in the First Circuit, the District of New Hampshire, however, has refrained from applying the time and date requirements articulated in Pereira in illegal reentry cases. See Mendoza-Sánchez, 2018 U.S. Dist. LEXIS *7 ("The court also disagrees . . . that a noncitizen need not meet § 1326(d)'s prerequisites for a collateral attack where the removal order is alleged to be void for lack of subject matter jurisdiction."); United States v. Mejía, No. 18-133, 2018 U.S. Dist. LEXIS 196624 *2 (D.N.H. Nov. 19, 2018) ("The court declines to adopt so broad an interpretation of [Pereira] and concludes that lack of the time and place in [the defendant's] initial notice to appear did not divest the Immigration Court of subject-matter jurisdiction to issue his removal order."); United States v. Flores-Mora, No. 18-160, 2018 U.S. Dist. LEXIS 196623 (D.N.H. Nov. 19, 2018) (denying motion to dismiss because "nowhere in Pereira did the Supreme Court suggest that its interpretation of § 1229(a) *vis-á-vis* the stop-time rule acted to strip immigration courts of jurisdiction over removal proceedings").[7]  Accordingly, prior

---

[7] The Court is unaware of any decision published in the First Circuit that has invalidated a Notice to Appear in an illegal reentry case pursuant to the Supreme Court's holding in Pereira.

authority in the First Circuit suggests that Pereira is confined to the stop-time rule set forth in section 1229(a).[8]

The minority of courts that apply Pereira in illegal reentry cases are misguided. See United States v. Virgen-Ponce, 320 F. Supp. 3d 1164 (E.D. Wash. 2018); United States v. Zapata-Cortinas, No. 18-343, 2018 U.S. Dist. LEXIS 172484 (W.D. Tex. Oct. 2, 2018); United States v. Ortiz, No. 18-017, 2018 U.S. Dist. LEXIS 190986 (D.N.D. Nov. 7, 2018). An expansive interpretation of Pereira disregards the requirements that Congress mandated for collateral attacks pursuant to section 1326(d). A broad application of Pereira relieves defendants charged with illegally

---

[8] The majority of courts to address this issue have interpreted Pereira narrowly. See United States v. Escobar, No. 18-3090, 2018 U.S. Dist. LEXIS 209628 *7 (D. Neb. Nov. 30, 2018) (noting that "Pereira does not define, or even mention, when an Immigration Court obtains jurisdiction over an immigration proceeding, and it does not limit the Attorney General's authority to adopt regulations implementing the INA — including the prerequisites for vesting jurisdiction in the Immigration Court"); United States v. Larios-Ajualat, No. 18-10076, 2018 U.S. Dist. LEXIS 176649 *18 (D. Ka. Oct. 15, 2018) ("Even assuming the immigration court lacked 'subject matter jurisdiction,' or acted beyond its statutory authority by ordering Defendant's removal in 2008, that still would not exempt the removal order from the requirements of § 1326(d)."); United States v. Chávez, No. 17-40106, 2018 U.S. Dist. LEXIS 198468 *18 (D. Ka. Nov. 21, 2018) ("To the extent Defendant contends an immigration court can be divested of subject matter jurisdiction because of a defective notice to appear, the Court disagrees."); United States v. Cortez, No. 18-22, 2018 U.S. Dist. LEXIS 194689 *7 (W.D. Va. Nov. 15, 2018) ("Neither Pereira nor 8 U.S.C. § 1229(a) control when and how subject matter jurisdiction over a removal proceeding vests in an immigration court."); United States v. Romero-Cáceres, No. 18-354, 2018 U.S. Dist. LEXIS 197439 *15 (E.D. Va. Nov. 19, 2018) ("Pereira's narrow holding does not require a notice to appeal to include the date and time of an alien's pending removal proceeding in order to vest the immigration court with jurisdiction over the proceeding."); United States v. Briones-Herrera, No. 18-214, 2018 U.S. Dist. LEXIS 183915 (W.D. Okla. Oct. 16, 2019) (denying motion to dismiss and rejecting defendant's request "to extend Pereira to his criminal case").

reentering the United States from demonstrating, *inter alia*, exhaustion of administrative remedies by presenting an alternative defense based on a purported lack of jurisdiction. See 8 U.S.C. § 1326(d). Moreover, these decisions infer that section 1229(a) and 8 C.F.R. section 1003.14 refer to the same Notice to Appear. That a Notice to Appear may suffice to confer jurisdiction on an immigration court, but fail to trigger the stop-time is consistent with the statutory and regulatory framework adopted by Congress and the Attorney General, respectively. See United States v. Ramírez, No. 18-026, 2018 U.S. Dist. LEXIS 19556 *8 n.3 (W.D. Va. Nov. 16, 2018) (holding that "even if the statute and regulations refer to the same notice to appear, it does not necessarily follow that the time and place criteria listed in § 1229(a)(1) for purposes of providing notice to the alien must be imported into § 1003.14 and § 1003.15, which serve the distinct purpose of establishing the immigration court's subject matter jurisdiction"). Accordingly, Pereira cannot substantiate Pérez's motion to dismiss the indictment.

**B. Collateral Attack Pursuant to 8 U.S.C. § 1326(d)**

Pérez presents a collateral attack against the 2010 removal order pursuant to section 1326(d). (Docket No. 28.) He contends that "[w]ere it not for failure of the immigration judge to inform defendant Pérez of his apparent eligibility [for a voluntary

departure], he would have made the request before or at the master calendar hearing, and pay his way out of the United States." Id. at p. 4. The collateral attack, however, is futile.

Pursuant to section 1326(d), Pérez must demonstrate that "he has exhausted administrative remedies, that he was improperly deprived of the opportunity for judicial review, and that the deportation order was fundamentally unfair." United States v. DeLeon, 444 F.3d 41, 44 (1st Cir. 2006) (citing 8 U.S.C. § 1326(d)). Courts "ordinarily should address the initial test of exhaustion of remedies before going on to the two other tests." Id. at 45. To fulfill this requirement, an alien "must have filed a motion to reopen, appealed to the Board of Immigration Appeals, and pursued all other administrative remedies available to him." United States v. Arita-Campos, 607 F.3d 487, 491 (7th Cir. 2010). Waiver of an appeal at a removal hearing constitutes a failure to exhaust administrative remedies. See United States v. Soto-Mateo, 799 F.3d 117, 120 (1st Cir. 2015) ("[Defendant] concedes that he did not exhaust available administrative remedies but, rather, waived his right to appeal the [immigration judge's] removal order to the Board of Immigration Appeals."); United States v. Cerna, 603 F.3d 32, 38 (2nd Cir. 2010) ("[If] an alien knowingly and intelligently waives his right to appeal an order of deportation, then his failure to exhaust administrative remedies will bar

collateral attack on the order in a subsequent illegal reentry prosecution under § 1326(d).") (citation omitted).

Pérez waived his right to appeal the 2010 removal order. (Docket No. 25, Ex. 2.) This waiver is fatal to his collateral attack against the illegal reentry allegation. Because Pérez failed to exhaust administrative remedies, the Court need not address the remaining section 1326(d) requirements. See Soto Mateo, 799 F.3d at 124 ("Given the appellant's failure to exhaust administrative remedies as required by section 1326(d)(1), we need not reach the question of whether he satisfied either the judicial review requirement of section 1326(d)(2) or the fundamental fairness requirement of section 1326(d)(3)."). Consequently, the Court **DENIES** Pérez's motion to dismiss the indictment.

## III. Conclusion

For the reasons set forth above, Pérez's motion to dismiss the indictment is **DENIED**. (Docket Nos. 20 & 28.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 21, 2018.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE